Good morning. May it please the court. My name is Robert Cohn. I would like to reserve three minutes for rebuttal. Can I ask you to speak right up? Absolutely. I will not be arguing today the last point from our brief, which contended that the claims were really different in the two lawsuits. The earlier derivative lawsuit did involve the Spider-Man characters and the other, Spider-Man and the other characters from before 1998. Instead, the issue is whether fundamental due process is violated by precluding Stan Lee Media from asserting its claims on the basis of that dismissal when Stan Lee Media was not in that case and was not represented by any party in that case. And related to that is the question of whether without Stan Lee Media being in the case, the courts had the authority to just call a halt or to say enough is enough. And the answer is without Stan Lee Media being there, no, they do not have that authority. Let me ask you a couple of questions kind of at the get-go. Yes, sir. My understanding is that SLMI or its predecessor was in business from approximately 1998 to 2001. Is that right? It went out of business effectively in December of 2000. Am I right about the period of time when it was in business, 98 to 01? It was more like 99 to 2000. Okay. And when it filed for bankruptcy? It filed for bankruptcy in February 2001. During that time, it did not exploit the rights to any of the characters it now claims. Is that correct? That is correct in part. The part that's not correct is to suggest that Stan Lee Media claims 100 percent ownership of these rights. We do not claim 100 percent ownership of these rights. Stan Lee himself admits that he himself was only a co-creator of the characters. So it's doubtful that he possessed 100 percent of the rights that he could have assigned to our company to begin with. What rights did SLMI exploit of these characters during that period? Of the characters, none. So it is correct to say that they did not exploit the rights to any of these valuable characters now coined? That is correct. What is not correct is to assert from that an inference that that means that they had no rights. Let me go on just quickly, and then you come back and jump all over this if you'd like. When you went public in 99, SLMI did not list the rights to these characters in its public filings. Is that correct? To my knowledge, that is correct. And when you file for bankruptcy, which requires the applicant, the person seeking bankruptcy protection to list all of its assets and liabilities, it did not list as an asset or a claim the claim to any of these characters. Is that correct? That is correct. Why are we here? Because those facts have little, if anything, to do with our claim. Well, isn't there a principle of judicial estoppel that if you don't list property in a bankruptcy and you obtain bankruptcy protection as a result, that you lose the opportunity to come to a different court later and claim those property rights that were never included? I'm not familiar with that doctrine. I don't think it would apply here. Just speaking from what I am aware of. Bankruptcy law 101. When you go into bankruptcy court and you say, I want your protection, you're required to lay out to the bankruptcy court and its trustee, if there is one, everything that you own, might own, including claims, lawsuits, litigation, on both sides of the equation so the court can marshal the assets and then distribute them equitably. And if you fail, you can't not list something and then after you're given a discharge in bankruptcy, emerge in the bright light of day and say, oh, by the way, there is something that I still own. A couple of key points in response to those observations. There was no discharge. There was no reorganization. We didn't come out from the bright lights. All there was was a dismissal of the case when there was not enough money in the estate to pay the trustee fees. I don't think you can say, but we got relief. Did it shift over to liquidation? It never did. It was filed as an 11? It was filed as an 11. It stayed as an 11. It was moribund for years. One could think that maybe they waited out some time for the statute of limitations to run on some of these claims. I'm not sure. But we did not obtain relief of the kind that I think is being suggested would be a basis for estoppel down the road. Now, in terms of the assets that were listed, again, I'm not familiar with the schedules to this detail. I think estoppel may apply even without a discharge. The problem is you're taking inconsistent positions in different cases. I don't think we took – I don't think the current – certainly the current management is not taking a position that's inconsistent. But the question maybe has to do with the debtor in possession taking a position. The debtor in possession was controlled by Mr. Stan Lee. So I don't think he comes to the court with the requisite clean hands. It was SLMI that filed, correct? The corporation filed. All right. And then the schedules were prepared by the debtor in possession. And that's who's here before us today, the same corporation that filed for bankruptcy. The corporation is here, not the debtor in possession. Who's the debtor in possession? The debtor in possession was the corporation, which was run by a person named Junko Kobayashi, who also worked for a company called POW, where her boss was Stan Lee. So you're saying that judicial estoppel, that if you take an inconsistent position, we really have to go and look and see who was on the board of directors or who was in charge? Well, I guess I would say a couple things. First of all, at least two things. For judicial estoppel to apply, you have to get relief on the basis of an assertion. Secondly, for any kind of estoppel to apply, the party seeking the benefit of the estoppel has to come to the court with clean hands. And that has not been shown. That's not true for judicial estoppel. It's designed to protect the court and not to protect other individuals. So there isn't really a clean hands argument that I'm aware of in the judicial estoppel context. But I am interested in your statement that by taking that inconsistent position, you obtained nothing in the bankruptcy. I'm not sure where to go with that. Are there cases that say if the bankruptcy just fizzles and is dismissed that it's non-final or something along those lines? Well, I don't know. This issue has not been briefed. I'd be happy to look into that question. I do know that the Bankruptcy Code has provisions that deal with what happens when there's a dismissal. I'm not sure if it specifically deals with this estoppel question. The Bankruptcy Code says that the assets of the debtor are re-vested in title to whoever owned them before the petition was filed. As far as the schedules are concerned, and again I'll have to look at them because this issue has not come up in this exact way, I'm pretty sure that everybody understood that the trademark, Stan Lee, was owned at least in part by the company. And whether that's in the schedules or not, I'm not sure, but certainly in 2007 when Mr. Lee filed this case, he filed the case on behalf of Stan Lee Media derivatively, asserting on behalf of Stan Lee Media that Stan Lee Media owns part interest in the trademark Stan Lee. And the other part, he said, had been transferred to QED and POW. Now we know that that transfer was later held to be invalid. That was the original complaint filed in this case. And then in the first amended complaint, they added to that the allegation that Stan Lee Media also owns the rights of publicity. This is the likeness, the image, the actual name of Mr. Stan Lee. Again, I don't know what the schedules may have listed, but I'd be very surprised if they did not list the name of the company and the associated trademarks. Moving on to something that was probably more central to what you were expecting to address, your view of the decision by Judge Crotty as not binding us is that there was no privity, right? There is no privity because we were not represented in that case. The corporation did appear, but you don't, or did it? The corporation did not appear at any time before the dismissal, which was the final judgment. And then, of course, there was an appeal from that. That has to be done within 30 days. The appeal was filed, and then shortly after the appeal was filed, the Court of Appeals in Colorado, in a separate case, decided that Stan Lee Media did have a validly elected board of directors after all. And so at that point, there was an effort to intervene. Now, is this where your Honor is interested in having a discussion? Was that board of directors different from the people who appeared before Judge Crotty? I mean, controlling the corporation? Okay, so the people who appeared before Judge Crotty were Jose Abedin and Christopher Belland. And in an earlier version of the complaint, there was another person of significance. His name was Nelson Thal. Nelson Thal was dropped from the amended pleading. I don't know why, but he was. There was also Petrovitz. Did you mention him? I didn't mention him. He was one of the plaintiffs originally? That's true. That's true. And none of them were among those who were found to be members of the board of directors by the Colorado court? The Colorado court approved the election by the shareholders. The point of the Colorado court's ruling was to say that there was a valid election and that the election could not be invalidated for lack of a quorum. There was no dispute as to who was elected, only as to whether the election had a quorum. And who was elected is different from the people who were in the suit before Judge Crotty? Only in part. In part, they were the same. Now, this relates to the issue of representation and virtual representation. Our view is that merely because of the fact that two of the directors, two of the subsequently seated directors were involved in the earlier litigation, that does not create an identity of parties. It clearly doesn't create an identity of parties. They're not the same party. The question has to be whether they are representatives of a party. Was the election that was before the Colorado court held before or after the activity that gave rise to the suit before Judge Crotty? As Judge Crotty viewed it, the activity giving rise to the suit before him was an assignment in November of 1998 from Lee to Marvel. That took place a decade before the election in question. The election in question took place in December of 2008. And at that time, the plaintiffs were not shareholders. That was the finding, right? At the time of the assignment. That's correct. A decade earlier. That's right, and that's why they lacked standing to represent the corporation, and that's why they could not represent the corporation. In your view, that breaks privity. In my view, that breaks privity because of the Supreme Court's holding in Smith v. Bayer Corporation. Now, the district court in this case, the reason why the district court has to be reversed is the error in the conclusion that the interest of Stanley Media was protected because Mr. Abedin understood himself to be suing in a representative capacity. Now, this draws from language from an earlier Supreme Court case called Taylor v. Sturgill, which talks about a non-party, excuse me, a party who understands him or herself to be representing someone else can bind them. But in Smith v. Bayer, the court said that that's not really enough. It's not the subjective understanding of a party. It's not enough that Mr. McCollins intended to represent the class. If the court holds that you don't represent the class, then you don't represent the class, and therefore the class cannot be bound. Counsel, you're down to about a minute and a half if you want to save some time for rebuttal. I do want to save time for rebuttal. Thank you. Excuse me. Good morning, Your Honors. May it please the Court, Ira Metetsky for the affilies, Stan Lee et al. In our view, Judge Wilson correctly dismissed this case on grounds of res judicata because the three classic requirements for res judicata were satisfied. There was a final judgment on the merits in the prior proceeding, which here is the Aberdeen case before Judge Crotty. There was an identity of claims before between the Aberdeen case and the case before Judge Wilson, which I think has been conceded today. And lastly, that there was identity or privity of parties. That's the part that I have difficulty with because of the fact that ultimately the holding in that case was that the plaintiffs were not fiduciaries. They were not shareholders at the time of the relevant activities that were the basis of that litigation. I think that that is partly correct, Your Honor, but I think there was a holding that the plaintiffs did not meet the requirements of Rule 23 because they were not shareholders at the time of the underlying events. But there was also no dispute that they were shareholders throughout the time of the litigation. Nonetheless, Judge Crotty found that they did not satisfy the requirements of Rule 23, 23.1, I should say, which governs derivative suits. Had he stopped there, I don't think there's any dispute that we could not argue res judicata when the company now tries to bring the claim. However, Judge Crotty did not stop there. He went on for several pages of opinion to discuss the merits of the claims, going through each and every one of the eight causes of action in the Aberdeen complaint, and finding that each of them was dismissible on the merits based on the statute of limitations, which sweeps uniformly through all the claims as well as through other grounds that are unique to each of the claims. And it's been well settled for many years. The Supreme Court decided in Woods this court is determined, and it's also the law in the Second Circuit where Judge Crotty sits, that alternative holdings are independently preclusive. If a court rules against a party for two reasons, the party is stopped by both of the holdings. Let me follow that up by asking a slightly different question. And would you tell us whether in the district court here your motion to dismiss was grounded on any other issues besides claim preclusion? Were there other reasons that you gave that the court didn't end up relying on? Yes, Your Honor. And we've briefed both of those. Point one of our brief talks about preclusion. The statute of limitations. Point two of our brief talks about the statute of limitations independent of restitution. And the third one is the implausibility of the claims. The implausibility of the claims. And I think that goes to some of the points that Judge Hawkins was making earlier, which is that at least as to the Marvel piece of the case, which is the vast majority of the case, the claim is inherently implausible on its face. This is clearly a post hoc litigation afterthought. That in 1998, Stan Lee signs the agreements, which were never intended to assign any of the Marvel characters. What was going on was that Stan Lee was saying instead of working full time for Marvel, creating intellectual property for Marvel as work for hire, and he was now going to work only part time for Marvel, 10 or 15 hours a week. And he was now going to start this new entity called Stanley Media, for which going forward he would create new characters which would belong to Stanley Media. That was what was going on. And that's why in 1999 and 2000, and for that matter thereafter, Marvel is producing movies with all these characters and publishing the comic books every month, and SLMI is doing nothing with the characters because it never even dawned on anybody that SLMI owned Spider-Man or the Fantastic Four or Iron Man or any of the properties. The prospectus talks about characters Mr. Lee created later, the drifter, the accuser. Nice enough characters, but not valuable. They never took off. And SLMI unfortunately goes bankrupt, does not list any of the Marvel characters. Seven years later, someone reads the agreements with a microscope and says, is it possible that we could conjure up some sort of argument that we own Spider-Man? And that's where this comes from. It's clearly we submit is not plausible, and to answer your Honor's question, that is an alternative ground that we briefed before Judge Wilson, although he didn't reach it, and that we rely upon here. We also rely independently on the statute of limitations, because whether or not Judge Crotty was correct in finding that the claims were time-barred, whether or not it was restricted to Cotta that Judge Crotty found the claims time-barred, he was correct in finding the claims time-barred. Can I ask a question back on the privity issue? The general rule, as I understand it, is that a derivative action can bind parties if there's a similarity of interest. Yes, Your Honor. That's the general rule? Yes, Your Honor. Did you find any cases that allow it in this situation, where there was a finding that they weren't shareholders at the time of the events? I didn't find a case on this specific scenario. What I did find are a number of cases from this court and from other courts, including Judge Sweet's decision, that hold that the requirements for Rule 23 are not jurisdictional, don't go to standing in the constitutional sense, they are just another element of the merits. And as the Supreme Court recently reminded us in Letzmark, statutory prerequisites basically endorse that line of reasoning, saying that statutory prerequisites to bringing a claim are not an element of what would constitutionally be considered standing, their absence does not deprive the court of jurisdiction, it's just an element of the merits. And having a timely claim under the statute of limitations is also an element of the merits. Those two alternative holdings, I think, have equal dignity, and as I pointed out a few moments ago, our position is that the holding that these claims are time-barred is independently preclusive. In the alternative, as I said, we argue that this court on the basis of this record can determine that they are certainly not any less untimely than when Judge Crotty found them untimely, when Judge Sweet found them untimely. And the Second Circuit, in affirming Judge Sweet, in the context there of SLMI's attempt to bring a Rule 60 motion, in a case it hadn't been a party to, to piggyback on an earlier unrelated suit and take the statute of limitations back, Judge Sweet said they can't do that. And in saying he can't do that, he said none of the excuses that SLMI has offered for tolling were sufficient to trigger a tolling of what would otherwise clearly be untimely claims. All these claims are either three-year statutes or four-year statutes. The time has to start to run no later than January of 2001, when Mr. Lee says you've breached this contract, whatever it said, and I'm not going to honor it anymore. So the claims are gone by 2004, 2005. No one even dreams them up until 2007. Judge Sweet found that none of the excuses that SLMI offered for tolling were valid, and therefore the claims were timed by the Second Circuit, although it declined to reach res judicata, affirms on that specific point, saying the fact that, I think the Second Circuit's words were, the fact that SLMI's management was in disarray during this period of time does not extend the time. So our primary argument is to affirm Judge Wilson. We think he did get it right, both on the privity point and on the other points. We don't know of any reason that Abedin, who is the same person, to answer another question your honors asked earlier, we are talking about the same people. The board of directors that was elected in the disputed election in 2008, whose validity was recognized by the California court in 2010, I'm sorry, the Colorado court in 2010, was Mr. Abedin, Mr. Thal, and Mr. Siegel. Mr. Abedin today is the president. He was the named plaintiff in the Abedin derivative case in New York, litigated it fully through a number of eminent law firms, lost, and now SLMI wants to walk away from it. Mr. Abedin individually was the lead plaintiff in the derivative case. Mr. Abedin today is the chairman, president, one of the three directors, and the president of the special litigation committee of SLMI. He now argues that he personally did not effectively represent the interests of SLMI in the Abedin case that he brought in a representative capacity. There's no dispute that it was in a representative capacity. The very caption says, Jose Abedin et al. on behalf of Stanley Media Inc., with a representative suit. Mr. Thal was also a plaintiff, at least in the original case, the second member of the board of directors. He is basically arguing that he had the ineffective assistance of himself, in that he should now, because he's put a different hat on and is calling himself the chairman of SLMI, should get to have really a do-over of the same claims that Judge Crotty found, and we submit correctly found, were time barred four and a half years ago. And allowing that do-over is, we think, inconsistent with the rules of res judicata, inconsistent with the purpose of res judicata, which is to insist that every litigant get one but only one opportunity, and not to make the judiciary of now multiple states hear the same claims. We've had the litigation in New York. We've had this litigation for several years before Judge Wilson. SLMI has now filed another duplicative case in Colorado, which is dismissed. SLMI has filed litigation in Pennsylvania, which is pending. All in the same claims that Judge Crotty, we submit correctly found, it was time to call a halt to four and a half years ago. So you say basta? Judge Crotty says basta. Judge Sweet says basta. Judge Wilson says basta. And you think they're right? And we think they're right. We think they really are. We really think that they are right, that SLMI, there were no new facts since 2009. There were no new claims since 2009. It's the same case. It's the same case. It's the same people. And there's no reason to – Judge Wilson correctly found that despite, you know, all of the arguments that SLMI advanced before him, there was no basis for any other result. You don't have to use all your time if you don't want to. I think I have made my central points. Thank you, Your Honors. Thank you very much. Thank you. Mr. Cohn, you have some rebuttals to remain. Before I rebut, are there any questions in particular from the panel? Well, why don't we start with any of the factual arguments that your opposing counsel made about broadly defined the identity of parties incorrect? Factually, no. Legally, yes. Okay. Legally, the identity of interests doesn't count. You have to be actually represented. If you're not actually represented, then you're virtually represented, and that's what used to be okay if somebody had the same interest. Who was Mr. Abedin sort of representing in the two prior suits back east? Well, in the one prior suit that Judge Crowdy decided. He was the main plaintiff. He was purporting to represent the interest of Stanley Media, and he was told that he could not do that by the court, who said, you cannot represent the interest of Stanley Media. Now, this question about whether he did it effectively or adequately, as Judge Wilson in the California District Court noted, that wasn't even really necessary to decide. You don't have to decide whether somebody's an adequate representative if they're not a representative, and that was the holding. That was the holding by Judge Crowdy. You're not a representative. Now, it used to be okay to say that, well, somebody else who had your same interests adequately represented them and got a judgment on the merits. I would like to, even though your time has expired, I'd like to give you a chance to respond to the question of statute of limitations. Why is that not a valid alternative ground for affirming? I believe that to be essentially factual and not capable of being resolved on the pleadings. There are two statute of limitations, broadly speaking. Well, it can be. There's nothing inherent about a statute of limitations that can't be looked at on a record. Where is there a genuine issue of material fact on timeliness? There are several. First, it depends on which part of the case you're looking at, but the part of the case that challenges the November 1998 assignment to Marvel, obviously that happened in November of 1998. But the factual issue is when anybody could have reasonably known that that had happened. We have to exclude from this calculus the knowledge of Mr. Lee himself. That's the doctrine of adverse domination. The wrongdoer himself knows about it, but even though he happens to be running the company, you don't impute that knowledge to the company for purposes of statute of limitations. So when did that cause of action accrue? Depends on when it could have been reasonably discovered. Now, the earliest that it possibly could have been discovered, I submit, is November of 2002 when Mr. Lee attaches a copy of that assignment to a complaint that he files in New York. Well, what inference should we draw from the fact that your client didn't list any of these in the bankruptcy, didn't take any steps that suggested that there was a right to these? I mean, isn't that pretty clear evidence that they knew about it? No, I think it's evidence that Mr. Lee covered it up. I don't think it's evidence of anything other than the fact that Mr. Lee covered it up. So if you knew about it in 2002, how is it still timely? Well, I didn't mean to suggest that anybody actually knew about it in 2002 other than the parties in New York. That's the earliest that they could have. That's the earliest they possibly could have. The factual issue then becomes when would it have been reasonable for them to actually know about it, assuming we can establish when they actually did. But whenever they did, it must have been during the bankruptcy of Stanley Media, which went on until December 2006. Now, Judge Sweet and my opponents have cited this in his brief. Judge Sweet observed that it might have been possible for a shareholder or a creditor to petition the bankruptcy court for permission to sue derivatively on behalf of the estate. This is not true. A shareholder could not do that. There's no cases where a shareholder has ever succeeded in doing that. In the one case cited by Judge Sweet, the shareholders were told, you don't even have standing to file a motion asking for standing to sue derivatively. And the reason was that the shareholders did not stand to financially benefit from a distribution from the estate, which was broke. Well, this estate was broke, too. It didn't even have enough money to pay the trustee fees. So there's no possible way that a shareholder can ask for permission to sue on behalf of the estate until there is no more estate and the case is dismissed in December 2006. Couldn't that have brought an asset into the estate that you haven't listed? I beg your pardon? It would have brought in another asset if it were successful, correct? It might have. Yes, if it were successful, it would have. How much that's worth, I think today we don't know. You certainly think it's worth something. I think it's worth something. I think the thing that it was worth to marvel at the time, speaking about the 1998 assignment because the other statute of limitations issue has to do with the termination of rights, the rights that concededly were assigned to Stanley Media, the asserted termination that took place in a letter of January 30, 2001. But as to the so-called marvel rights, marvel clearly thought they were valuable and so did Lee because they negotiated that the assignment from Lee to marvel could be canceled by Lee. If Lee did not get paid under his assignment to marvel, he retained the right to, quote, unquote, vitiate the assignment. And that's something that he didn't have with us. Thank you. We appreciate the arguments of both counsel. The case just argued is submitted and we're adjourned for this session.
judges: Sedwick, Hawkins, Graber